So we'll move on to our last case, Arnold v. KJD Real Estate, Mr. Helwig. Thank you, Your Honor. This is an interpleader action involving a dispute as to superior right to stock in two closely held corporations, Geisler Roofing and D&D Properties, both of whom are parties to this case. KJD Real Estate, whom I represent, claims a superior right to the stock based upon a stock purchase agreement it entered into with Mr. Arnold, the owner of the stock, back in 2007. Geisler and D&D claim a superior right to the stock based upon a default judgment that they received approximately one year after KJD's purchase. So why do you have standing to bring the appeal when you asserted in your complaint that you're indifferent to the outcome and have no claim to continued ownership of the stock? I'm sorry, Your Honor. I represent KJD, the purchaser of the stock. Mr. Gross represents Mr. Arnold, who filed the interpleader. So I'm sure Mr. Gross will be able to... So then let me ask you this question. What's the best argument that you did not concede the validity of the restriction and forfeit this issue? Well, I think there's two responses to that, Judge. First, the issue of the restriction is really a defense to KJD's claim, which we also asserted a declaratory relief claim seeking the...requesting finding that we were the rightful owner. The companies did not raise the transfer restriction at trial, did not plead it as a defense. And since it's really posited as a defense, it's incumbent upon them to make a prima facie showing of the validity before we need to address the validity. So that would be point one. Point two is, even if the court were to find or even if we were to presume that the stock transfer restriction were valid, that doesn't impact a finding that Geisler and D&D or Geisler, it only impacts Geisler stock. That Geisler waived or is stopped from enforcing that restriction here by virtue of its prior conduct. And sufficient or significant evidence was adduced at trial that in the one prior transaction involving the sale of the Geisler stock back in 2002, that Geisler ignored the transfer restriction. At that time, Brenda Owen was one of the owners. She owned 51%. Dan Arnold was another owner. He owned 38%. Dan Arnold and then Mr. Owen, the president of Geisler, owned 11%. Where's the stock now? The stock now is in the possession of Geisler. Okay. Pursuant to a compelled transfer by a state court while this case was on appeal to this court in the first instance. Is it in escrow someplace or waiting for another determination? I mean, the stock, I assume, is on its face. They have first refusal, but apparently that doesn't, some people say that doesn't matter. Correct, Your Honor. It's our position that they can't and have waived the right to enforce the transfer restriction because they failed to enforce it in a prior transaction. Okay. They have the stock. That applies to everybody. First refusal or whatever doesn't mean that they have to agree to it. Look, this seems pretty, the district court called it convoluted. And I would agree that it's got a lengthy history and record. Yeah. But Geisler is in possession of the stock now. The D&D stock does not have, it's not certificated. It does not have a transfer restriction, so a lot of the argument only applies to the Geisler stock. There's no transfer restriction with respect to the D&D stock. But those parties are in possession of the shares, the stock. They're parties to this case. The district court has the ability or this court has the ability to affect complete relief between the parties because they've still got the stock. Now, your client's owed, paid $100,000? Paid $100,000, so paid an installment under the stock purchase agreement, and another installment was due at a later date. And the district court ordered you get paid back. Correct. As part of the district court's judgment, Arnold was required to pay back to KJD the $100,000. With respect to the validity of the stock transfer restriction, the district court applied the wrong standard in assessing the validity. The district court looked at 810 ILCS 58204, which pertains to when an otherwise valid restriction can be enforced against someone without knowledge of it. The proper standard to apply when assessing validity is 805 ILCS 5-6.55, which addresses when a stock restriction is valid. Under that proper statute, the restriction here is not valid on its face. It does not satisfy any of the four prongs. The restriction contains no time limitation in which it must be exercised. Therefore, it fails to satisfy prong C1. It does not obligate the corporation or any other shareholders to purchase a stock. Therefore, it doesn't satisfy C2. It does not require consent or approval of the corporation or other shareholders to a transfer. So it doesn't satisfy C3. And it does not satisfy C4 because it does not prohibit the transfer to designated persons or a class of persons. So under the appropriate standard, which the district court failed to apply, the transfer restriction is invalid. Furthermore, as I discussed briefly before, Geisler has waived or has stopped from enforcing this transfer restriction because it failed to enforce the transfer restriction in the prior transfer of stock. And therefore, it can't now rely upon that restriction to void the sale to KJD in this case. There was ample evidence of that adduced to trial in the district court's finding that there was no evidence to support a finding of waiver or estoppel is clearly erroneous. So KJD has never gotten the title to the stock, never had it in its clause, has it? Your Honor, KJD never received the Geisler stock certificates. That's correct. As I mentioned, the DMV stock was not certificated, so there were no shares to receive there. In getting to why KJD has the superior claim, it's undisputed that KJD's purchase was first in time. KJD entered into a- That KJD did what? That KJD's purchase was first in time. KJD entered into the stock purchase agreement with Mr. Arnold back in 2007 at a time when it's undisputed that Mr. Arnold owned the shares. And Geisler and D&D's claim didn't come along until a year later when they received a default judgment. So between those two competing claims, which I think is the focus of the case, the first in time claim has superior priority. Your Honor, if you were first in time, why didn't you receive the certificates? KJD did not receive the certificates because Mr. Arnold believed he had lost them, but ultimately it was determined that they were in the possession of another individual. Another individual? Yes, a prior attorney that had represented Mr. Arnold in a preceding case that is unrelated to this one. So did Arnold recapture the stock certificates? He ultimately did, Your Honor. When the state court compelled him to transfer the stock over, his attorney in that case voluntarily turned over the shares at that time. But turned them over to whom? I guess to the court, which ultimately turned them over, or to Geisler and D&D at a court hearing. That was a case that KJD was not a party to. Why was KJD not a party? That was a prior case in which the default judgment was entered, filed by Geisler and D&D after KJD had purchased the stock. Geisler and D&D had knowledge that KJD had purchased. You purchased the stock, but you hadn't received the certificates, right? Yes, Your Honor. Well, what efforts did you make to get the certificates? Well, at the time we entered into the stock purchase agreement, we'd entered into stock powers, assignments, and then ultimately this proceeding was filed before any transfer was made, seeking a declaration from the district court as to, okay, we know we now have competing claims. No transfer of the certificates has occurred to anybody at that point. Which of these two claims is superior? And which is this case? This is a case before the district court. While that was going on, so at that point I think the issue was joined, KJD is trying to get the stock certificates. And while this is going on, and while the case was first on appeal to this court, a state court in Illinois, in a case to which KJD was not a party, compelled Mr. Arnold to transfer the stock to Geisler and D&D. And the waiver issue is a big deal for you, too, I guess. It is a big deal in that we, of course, do not believe that KJD has made any waiver because evidence was adduced to show that regardless of whether the transfer was made. Not you, they waived it, you're saying. Correct. They've waived it because they did not adhere to it. And, in fact, in the first instance, Geisler ignored the restriction so that Mr. Arnold couldn't gain majority control of the company. And in the second instance, say, no, no, we have to enforce it to preclude you from selling your shares. Well, did KJD try to enter the Arnold versus Geisler suit? At the point in time of the compelled transfer, Your Honor, that case was over. It was post-judgment, a default judgment had been entered, so there was no chance for KJD to intervene at a post-judgment stage. Okay. Well, thank you, Mr. Hallwood. Mr. Groves? May it please the Court, my name is Michael Groves, and I am here representing the appellant, one of the appellants, Dan Arnold. So can you address the standing question? You know my first question to you. I think it requires a two-part answer from me. The direct and short response is that Mr. Arnold considers himself to be aggrieved by the judgment, not by the Court's recognition that he had a legitimate, that he had a proper claim to make of being exposed to multiple liabilities, but because the judgment that was entered requires him to pay $100,000 to KJD. The longer answer, and maybe the real answer, is that. So you're saying that gives you standing and now a certain interest in the outcome because of the $100,000? That aggrievement gets taken care of if KJD prevails in this appeal, because if it gets the shares, then it won't be entitled to recover the $100,000 that it paid to Mr. Arnold for the shares, if it gets the shares. So that problem does get resolved if KJD is successful. The longer response to the Court's question is that this was, first of all, as the District Court recognized, it was a proper interpleader action. Mr. Arnold was faced with two parties, each demanding that he deliver to them the same shares of stock. So that's what interpleader is made for, and this was a correct interpleader action. Mr. Arnold did have a dog in the fight. He had a preferred outcome. The reality, the practicalities of the case being what they are, his economic interest would be served by a resolution in the District Court that favored KJD or in this Court. And that's why he made his position clear to the District Court. I don't understand either Rule 22 or the interpleader statute to require that he maintain his neutrality and not say anything about his preference. The District Court wasn't bound by his preference. Of course, neither is this Court, but he does have a better outcome for himself, and that's why he's advocated that position. There seem to be two principle controlling issues on the merits of the case other than these standing questions, and both have been addressed to some extent, addressed, I think, fully, really, by Mr. Helwig. The first is that Geisler and the corporate defendants, as the District Court referred to them, are stopped or have waived their right to enforce the transfer restriction because they didn't enforce it in 2002 with facts that are detailed in the briefs. They chose not to enforce it. The reason for not enforcing it or honoring the agreement at that time, as one of the principles testified, was to keep Mr. Arnold from obtaining a majority ownership and control of the corporation. And then they turned around and said that they needed to enforce it, and they chose to enforce it against this transfer. And the authority cited in Mr. Arnold's brief and also in KJD's brief about that estoppel or waiver issue. The other controlling determination by the District Court, I think, is the District Court's position that the non-delivery precludes, is conclusive of KJD's rights, and that also, I think, was addressed by Mr. Ludwig. I think I'm out of time. There are no further questions. Thank you. Thank you very much, Mr. Gross. Mr. Reed? If it pleases the Court, I'm Michael Reed, and I represent D&D Property Management and Geisler Roofing Incorporated. What has happened here is that KJD entered into an executory contract with Dan Arnold to attempt to purchase his shares. In that agreement, which is part of the record, the parties agreed as a condition for KJD to fulfill their end of this contract, to, in other words, bring this agreement to a close, is that they would have the shares delivered to them. They would have the certificates delivered to them. And as the Court alluded to, where are the shares now? Well, we have all of the shares. What's the total number of shares? I'm sorry? What's the total number of shares? Is there 100% someplace? Yes. Okay, 38% is in this stock, right? Correct. And the rest of it, has Geisler got all of it now? Geisler has all of the shares of both companies. So basically, this is going to be a minority shareholder's? He was going to be a 38% shareholder, and by the way, he's a competitor. Well, KJD is a competitor, right? Of Geisler. Yeah. It's in a record that they bid against jobs against each other. When do you see the books? When do you see the books at some point? The trial court very cogently observed that the ink was barely dry on the contract. That's my words. When KJD wants to run down and get the books of Geisler, books, minutes, records, ledgers, a whole raft of things, which under the statute is not even a legitimate purpose. So this is an executory contract between KJD and Dan Arnold. Dan Arnold doesn't have any standing. In his pleading, he said he's indifferent. He doesn't want competing claims, but he doesn't care. That's in his initial complaint. If he doesn't care, then he doesn't care. But he's here saying he cares. Well, he cares, he said, because he'll have a better outcome. Well, it was more money. That's right. That's what a better outcome is. Correct. Yes, Your Honor. And not a lot more, but it was substantial. And by the way, to clear one thing up, when Dan Arnold tendered his shares back to the companies, KJD was there, and there's $50,000 of the money that we paid Dan Arnold for the settlement for his shares being held by Dan Arnold's lawyer in his trust account. That occurred at the hearing. The present counsel wasn't there, but another lawyer for KJD was. And so it's an executory contract. And I think that if you just set aside all the noise about the stock restriction, and it's not noise, but it's a valid stock restriction, and it wasn't really brought up in the trial court, wasn't challenged. The trial court made two findings in that regard. One, that KJD concedes that the stock was restricted. And the second finding the court made is Arnold doesn't argue that the restriction is somehow invalid. Just setting that aside, the reason why Geisler has a superior claim to the shares is they own the shares now. They've got them. They've got them. And there isn't any under the law of how you transfer shares of stock, as the court knows, the first lesson is where are the certificates? You have to have them. They have to be delivered to you, and the corporation has to change the record ownership in the books of the company. Well, that's already occurred. There's back to Geisler. D&D is back to D&D. So there isn't really any valid argument, even if you forget about the stock restriction, whether it's valid, whether it was enforceable, whether it fits under the statute, because the delivery of the shares, which effectuates transfer of ownership, has already occurred, and it's back to Geisler and D&D. That's really the crux of the case. The court did discuss some of the issues regarding the stock restriction, and it was in the minutes. It's on the share certificate. KJD and Dan Arnold knew about the restrictions. There's a recital in the Stock Purchase Agreement referencing Article 8 of the Geisler Bylaws. So the fact that these restrictions were out there was not a hidden fact, and under the statute, if they're printed on the share certificate and they're in the bylaws, they're valid unless they're illegal somehow, and there isn't any illegality about these share restrictions. This company was formed in 1930 or 1926, and these bylaws have been on the books since then, and this restriction is designed to do exactly what it did, keep an outsider from intervening in the operation of the company and keeping management consistent. And that's what occurred here, and that's what has occurred here. The fact that they allege that there was a waiver by Geisler, to give the court a little bit of history, Arnold was a fired employee and minority shareholder. The other two shareholders were husband and wife. Fired, terminated, terminated employee. Fired, you said? Yes, sir. Yes. And during the pendency of that lawsuit, husband and wife, who were the other two shareholders other than Arnold, got a divorce, and if there was any non-tendering of the stock or non-putting the stock out to the other shareholders, it was Brenda Owen who did that, and she's not even part of this case. And secondly, if you look at some of the cases on what is the philosophy of a stock transfer restriction, if you offer them to another insider who's already a shareholder, that doesn't violate any agreement because the idea is to keep outsiders from coming into the company a week later, wanting to get the books, the records, the minutes, the general ledgers, all the checks, the W-2s, the cost reports, which is exactly what happened here. So we believe that the trial court in this case wrote a very well-reasoned article. It's quite lengthy, reciting the, I think the court says convoluted, I would say tortured record in this case because there's been state court proceedings that started in 1998, I believe, and it's been to the appellate court in the Fifth District on the issues that were decided by the state court, which are not really before this panel, but any questions? Other questions? Thank you very much. Thank you. Anything further? Quick point, Your Honor. Sure. With respect to counsel's argument that the delivery sort of ends the inquiry, I don't believe it does, and in fact the companies in briefing early on in this case stated, if the state court orders Arnold to sign his shares over to Geisler and D&D, then the dispute as to whether Geisler or KJD has a superior right to the shares will still stand. We agree. That's what the district court was asked to resolve. The fact that after the case was filed and while it was pending in a case that KJD was not a party to, Geisler and D&D were able to get the state court to compel delivery does not vitiate KJD's claim that its first in-time purchase gave it a superior right to receive delivery of the stock. And furthermore, just a point of clarification, KJD was not present at the time at the hearing at which the shares were compelled, was not represented by counsel. I believe what Mr. Reed was referring to was a later proceeding where claims were made as to proceeds but was not there at the time that the shares were transferred. Okay, thank you very much. Thank you all, counsel. This will be late night advisement and the court will be in recess.